# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MONTANEZ, JR., | 1:07-cv-00264 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| DERREL G. ADAMS, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Following a jury trial in the California Superior Court for the County of Fresno, Petitioner was convicted of one count of residential burglary. It was also found true that Petitioner served four prior prison terms due to felony convictions. In a bifurcated trial, the court found true the allegations that Petitioner suffered two prior convictions for serious and/or violent felonies within the meaning of California's "Three Strikes" law. He was sentenced to the aggregate sentence of 12 years in state prison, plus an additional 25 years to life in state prison.

Petitioner filed a timely notice of appeal. On June 1, 2006, the California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction and sentence. (Lodged Doc. C.)

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and Petitioner's traverse.

1

Petitioner filed a petition for review at the California Supreme Court.  (Lodged Doc. D.) The petition was denied on August 16, 2006.  (Lodged Doc. E.)

Petitioner filed the instant petition for writ of habeas corpus on February 20, 2007. (Court Doc. 1.)  Respondent filed an answer to the petition on August 1, 2007, and Petitioner filed a traverse on August 27, 2007.  (Court Docs. 8, 12.)

## STATEMENT OF FACTS

On November 20, 2003, [Petitioner] stole a gas-powered hedge trimmer and a gas-powered weed eater from a garage and rode away on a red mountain bike.  The owners of the tools saw [Petitioner] on the bicycle with their equipment.  They followed [Petitioner] in their vehicle and contacted the police. [Petitioner] eventually was detained by the police.  The owners of the hedge trimmer and weed eater drove to the location and identified him.

The first amended information charged [Petitioner] with first degree burglary (Pen. Code, §§ 459, 460, subd. (a)), two "strikes," two prior serious felony convictions (§ 667, subd. (a)), and the service of four prior prison terms.

On December 17, 2003, the attorney from the public defender's office assigned to represent [Petitioner] (PD1) brought a motion to conduct a live lineup. On December 30, 2003, the superior court denied the motion.

On January 5, 2004, [Petitioner] filed a written *Faretta* [FN1] motion to act as his own attorney as well as a separate written *Marsden* [FN2] motion for substitution of appointed counsel.  Nine days later, before his first two motions were heard, [Petitioner] filed another *Marsden* motion.

> FN1. In *Faretta v. California* (1975) 422 U.S. 806 (Faretta), the United States Supreme Court held that a defendant in a state criminal trial has a federal constitutional right to self-representation.

> FN2.  In *People v. Marsden* (1970) 2 Cal.3d 118 (Marsden), the California Supreme Court ruled that when a criminal defendant seeks substitution of counsel on the ground that appointed counsel is providing inadequate representation, a trial court must give the defendant an opportunity to explain the reasons for the request.  (Id. at pp. 123-125.)

On February 24, 2004, the superior court heard [Petitioner's] *Marsden* motion.  At the hearing, [Petitioner] stated, in effect, that PD1 had done a poor job in preparing and arguing the motion to conduct a live lineup and that his case was harmed as a result. [Petitioner] also stated that he had a conflict of interest with the public defender's office, but indicated this conflict was general and did not provide an explanation of how his interests conflicted with the interests of the public defender's office.

After listening to PD1's explanation of what happened on the motion to conduct a live lineup, the superior court denied the *Marsden* motion, thereby implicitly finding that PD1's representation on the motion had been adequate.

After the superior court ruled from the bench, PD1 advised the court that the case "is set for a preliminary hearing today. My client has requested that I continue the case out so that he can attempt to hire private counsel or consider a *Faretta* motion so that he can represent himself." The superior court continued the matter to March 16, 2004.

By March 16, 2004, the public defender's office had replaced PD1 as [Petitioner's] attorney with a deputy public defender who was more experienced and a member of the public defender's major crimes team (PD2).

On July 8, 2004, PD2 advised the superior court that [Petitioner] had recently written him and requested a *Marsden* motion. The superior court gave [Petitioner] an opportunity to explain the grounds for his request. [Petitioner] told the court that (1) he had a conflict of interest with the public defender's office, (2) the attorney lacked interest in his case, (3) the attorney was not qualified to defend him in a three strikes case because the attorney had not recently defended anybody with regards to theft crimes, and (4) after the attorney looked at [Petitioner's] case, he felt that [Petitioner] was guilty.

[Petitioner] also asked the court whether, as a three strikes candidate, he qualified "to have an appointed State attorney to be put on the wheel[.]" The superior court told the [Petitioner] that he had things mixed up a bit.

[Petitioner] then asked what he would have to do to get (1) a state counsel appointed or (2) an attorney from the Barker law firm. [FN3] [Petitioner] then stated, "I mean I really don't feel comfortable with him. I really don't want him on my team regardless of his qualifications."

> FN3. Barker and Associates is a law firm that has a contract with Fresno County to provide representation for an indigent defendant when the public defender's office has a conflict.

[Petitioner] stated that PD2 had told him that there was enough evidence to convict him and talked to [Petitioner] about making a deal. [Petitioner] then expressed his reluctance to go to trial in four days with an attorney who was talking to him about making a deal rather than presenting the best possible defense.

The superior court, based on its own experience with PD2 as well as PD2's description of his experience and qualifications, concluded PD2 was qualified to represent [Petitioner] in a theft case that involved a third strike. Immediately after the ruling, PD2 explained on the record the duty of candor that he owed his clients.

[Petitioner's] next *Marsden* motion was held on December 1, 2004. [Petitioner] claimed PD2 was not adequately representing him because PD2 (1) failed to make a discovery motion [Petitioner] requested, (2) had ignored his question during jury selection, (3) failed to confer with him when he should have, (4) had discussed making an admission of guilt in front of the district attorney, (5) failed to obtain tapes of conversations that witnesses had with a parole officer, (6) lacked any interest in presenting a defense, and (7) failed to meet with him a day or two before trial to discuss strategy or tell him what to expect.

The superior court found that PD2 had conferred sufficiently with [Petitioner], had a high level of interest, had put forth a high level of effort on

3

behalf of [Petitioner], had been thorough during voir dire, and conducted adequate discovery in the case, had behaved appropriately in conferring with the deputy district attorney, and was an experienced defense attorney.  The superior court explicitly found PD2 had provided excellent representation and that there was no irreconcilable conflict between him and [Petitioner].  The superior court also found that [Petitioner's] purpose in bringing the *Marsden* motion was to stop the criminal proceedings against him.  Accordingly, the superior court denied the motion.

Voir dire continued to select two alternative jurors, and the trial was held.  On December 6, 2004, the jury ended its deliberation in a deadlock, and the superior court declared a mistrial.

[Petitioner] was retried in February 2005, and the jury found him guilty of first degree burglary.  The jury also found true the allegations that [Petitioner] had suffered four prior convictions. [Petitioner] made no *Marsden* motions after December 1, 2004.

(Lodged Doc. C, Opinion at 2-5.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

1    This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

   The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

   While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.    Denial of Right to Represent Himself

   Petitioner contends that the trial court improperly denied his right to represent himself.

1  Petitioner raised this claim to the California Court of Appeal, Fifth Appellate District and
2  California Supreme Court.  Because the California Supreme Court's opinion is summary in
3  nature, however, this Court "looks through" that decision and presumes it adopted the reasoning
4  of the California Court of Appeal, the last state court to have issued a reasoned opinion.  See Ylst
5  v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)
6  (establishing, on habeas review, "look through" presumption that higher court agrees with lower
7  court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson,
8  217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court
9  opinion in determining whether state court's rejection of petitioner's claims was contrary to or an
10 unreasonable application of federal law under § 2254(d)(1)).

11         The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a
12 person brought to trial in any state or federal court be afforded the right to the assistance of
13 counsel before obtaining a conviction and punishment by imprisonment.  Faretta v. California,
14 422 U.S. 806, 807 (1975).  The defendant has a right to represent himself, however, he must
15 knowingly and voluntarily "waive" or "forego" the assistance of counsel.  United States v.
16 Robinson, 913 F.2d 712, 714 (9th Cir. 1990).  "A criminal defendant's assertion of his right to
17 self-representation must be timely and not for purposes of delay; it must also be unequivocal, as
18 well as voluntary and intelligent."  United States v. Kaczynski, 239 F.3d 1108, 1116 (9th Cir.
19 2001) (citation omitted).  "[C]ourts indulge in every reasonable presumption against waiver" of
20 counsel.  Brewer v. Williams, 430 U.S. 387, 404 (1977).

21         The California Court of Appeal denied the claim reasoning as follows:

> Here, [Petitioner] filed a written *Faretta* motion and a written *Marsden* motion on January 5, 2004.  Nine days later, before a hearing was held on the first two motions, [Petitioner] filed another written *Marsden* motion.  Another *Faretta* motion was not filed.  When the *Marsden* motion was heard on February 24, 2004, it appears that the superior court inferred that [Petitioner] had abandoned his *Faretta* motion when he filed a second *Marsden* motion on January 14, 2004, without also filing a second *Faretta* motion.  This inference also is supported by [Petitioner] making no statement at the hearing that he wanted to represent himself.  Also, when his *Marsden* motion was denied, PD1 stated that [Petitioner] "has requested that I continue the case out so that he can attempt to hire private counsel or consider a *Faretta* motion so that he can represent himself."  This statement supports the inference that, at that time, [Petitioner] was not pursuing the *Faretta* motion that he had filed on January 5, 2004.

> Accordingly, we conclude that [Petitioner] had abandoned his January 5, 2004, *Faretta* motion before the February 24, 2004, hearing. Stated otherwise, when that hearing was held, [Petitioner's] preference to represent himself and waive his right to counsel was not unequivocal. Thus, the trial court did not commit reversible error when it did not address [Petitioner's] January 5, 2004, written *Faretta* motion.

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. As the Court of Appeal properly found, Petitioner did not unequivocally invoke his constitutional right to represent himself. Although Petitioner filed a Faretta motion, along with a Marsden motion on January 5, 2004, nine days later Petitioner filed a second Marsden motion. He did not file a subsequent Faretta motion. A hearing was held on February 24, 2004, and at the outset Petitioner specifically stated that he was requesting a Mardsen hearing to terminate counsel. (Feb. 24, 2004, RT at1.) In addition to not filing a second Faretta motion, Petitioner never stated that he was requesting to represent himself. Petitioner cannot now claim that the trial court erred in denying his request as it was incumbent upon Petitioner to unequivocally make such request. Thus, given that Petitioner did not file a subsequent Faretta motion or voice any request to represent himself at the February 2004 hearing, the state court reasonably concluded that any such request to waive counsel and represent himself was not unequivocal, and the state court's resolution of Petitioner's claim did not "result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "result in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

D.   Constitutionality of CALJIC No. 2.15

Petitioner contends that CALJIC No. 2.15 "results in unconstitutional convictions."[2]

---

[2] As given in the instant case, CALJIC No. 2.15 states:

> If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of burglary. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.
>
> As corroboration, you may consider the attributes of possession, time, place and manner,

7

1  (Petition, at 5.) Petitioner contends that CALJIC No. 2.15 permitted a finding of guilt by a
2  standard less than "beyond a reasonable doubt." Because the California Supreme Court's
3  opinion is summary in nature, however, this Court "looks through" that decision and presumes it
4  adopted the reasoning of the California Court of Appeal, the last state court to have issued a
5  reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115
6  L.Ed.2d 706 (1991).

7       A challenge to a jury instruction solely as an error under state law does not state a claim
8  cognizable in a federal habeas corpus action. See, Estelle v. McGuire, 502 U.S. 62, 71-72
9  (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show
10 that the ailing instruction by itself so infected the entire trial that the resulting conviction violates
11 due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation,
12 but must be considered in the context of the instructions as a whole and the trial record. Id. The
13 court must evaluate jury instructions in the context of the overall charge to the jury as a
14 component of the entire trial process. See, United States v. Frady, 456 U.S. 152, 169 (1982)
15 (*citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined
16 that the instruction violated the petitioner's right to due process, a petitioner can only obtain
17 relief if the unconstitutional instruction had a substantial influence on the conviction and thereby
18 resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710
19 (1993) (whether the error had a substantial and injurious effect or influence in determining the
20 jury's verdict.). See, Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of
21 demonstrating that an erroneous instruction was so prejudicial that it will support a collateral
22 attack on the constitutional validity of a state court's judgment is even greater than the showing
23 required to establish plain error on direct appeal." Id.
24      In rejecting Petitioner's claim, the California Court of Appeal held:

26     that the defendant had an opportunity to commit the crime charged, the defendant's conduct, his
       false or contradictory statements, if any, and other statements he may have made with reference to
27     the property, a false account of how he acquired the property - - the possessions of the stolen
       property, and any other evidence which tends to connect the defendant with the crime charged.
28
   (V RT 721-722.)

8

> It is appropriate to give CALJIC No. 2.15 when the crime charged is burglary and the evidence is sufficient to support a finding that the defendant possessed recently stolen property. (*People v. Prieto* (2003) 30 Cal.4th 226, 249.) Furthermore, CALJIC No. 2.15 "has repeatedly withstood challenges on the grounds that it lessens the burden of proof or otherwise denies a defendant due process of law. [Citations.]" (*People v. Williams*, (2000) 79 Cal.App.4th 1157, 1173-1174; *see People v. Yeoman* (2003) 31 Cal.4th 93, 130-131 [rejecting contention that CALJIC No. 2.15 sets forth an unconstitutional mandatory or permissive presumption]; *People v. Prieto*, *supra*, at p.248; *People v. Holt* (1997) 15 Cal.4th 619, 676-677; *People v. Johnson* (1993) 6 Cal.4th 1, 35-38; *see also People v. Coffman* (2004) 34 Cal.4th 1, 101 [failure to limit CALJIC No. 2.15 to theft-related offenses was error, but harmless].)
>
> [Petitioner's] reliance upon *United States v. Gray* (5th Cir. 1980) 626 F.2d 494 is misplaced. There, a trial court instructed that only "slight" evidence was necessary to establish a defendant's participation in a conspiracy. In *Gray*, the Fifth Circuit Court of Appeals reiterated an earlier holding that such an instruction was erroneous because it tainted the reasonable doubt standard that applied to each element of an offense. (*Id*. at p. 500; *see United States v. Brasseauz* (5th Cir. 1975) 509 F.2d 157.) The instruction directly addressed the defendant's participation in the conspiracy and, because actual participation in the conspiracy is an essential element of a conspiracy charge *(e.g., United States v. Avila-Dominguez* (5th Cir. 1980) 610 F.2d 1266, 1271), created confusion over the prosecution's burden to prove each element beyond a reasonable doubt.
>
> Here, the jury was cautioned about inferring guilt based on [Petitioner's] possession of the stolen property and the need for other corroborating circumstantial evidence. Therefore, unlike the instruction in *Gray*, CALJIC No. 2.15 did not address a particular element of the offense charged and undermine the requirement that the element must be proven beyond a reasonable doubt-a topic addressed in other instructions.

(Lodged Doc. C, Opinion, at 9-10.)

First, CALJIC No. 2.15 does not address the prosecution's burden of proof. Second, the inference that the jury may draw from CALJIC No. 2.15 is permissive, and does not purport to modify or lessen the State's burden of proof. Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir. 1992). Third, a review of the totality of the circumstances does not demonstrate a due process violation, as the jury was specifically instructed that (1) it was to decide all questions of fact from the evidence (CALJIC No. 1.00), (2) it must consider all of the instructions as a whole and in light of each other (CALJIC No. 1.01), (3) to weigh the circumstantial evidence and that each fact or circumstance upon which an inference essential to establish guilt necessarily rests must be proved beyond a reasonable doubt (CALJIC No. 2.01), and (4) the government was required to prove defendant's guilt beyond a reasonable doubt (CALJIC No. 2.90). (I CT 63-64, 65, 70; RT 716-718, 720-721, 727.) Jurors are presumed to have followed the instructions given

9

to them. See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987); Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985); Hovey v. Ayers, 458 F.3d 892, 913 (9th Cir. 1006). Based on the foregoing, it simply cannot be said that CALJIC No. 2.15 was applied in a manner that reduced the prosecution's burden of proof, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.     Right to Counsel of Own Choice

Petitioner contends that he has the right to counsel of his choice. Petitioner contends that because the attorney-client relationship had irretrievably broken down, they could not work together and his constitutional right to counsel was violated. Petitioner raised this claim to the California Court of Appeal, Fifth Appellate District and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel in a prosecution. A criminal defendant who can afford to retain counsel has a qualified right to hire counsel of his choice. Wheat v. United States, 486 U.S. 153, 159, 164 (1988); United States v. Washington, 797 F.2d 1461, 1464 (9th Cir. 1986). If a defendant cannot afford to retain his own counsel he has no right to counsel of his own choosing. See Wheat v. United States, 486 U.S. at 159. The guarantee of counsel does not include a right to "a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Thus, "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc). The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. See Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir.), cert. denied, 513 U.S. 947 (1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000). The ultimate inquiry in a federal habeas proceeding is

whether the petitioner's Sixth Amendment right to counsel was violated. Cf. Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc). Thus, this Court considers whether the trial court's denial of the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

In denying Petitioner's claim, the Court of Appeal reasoned as follows:

> We conclude that [Petitioner's] appeal is limited to the question whether he established that the failure to replace the deputy public defender who replaced his first appointed attorney substantially impaired his right to assistance of counsel. First, the denial of the *Marsden* motions that sought to replace PD1 cannot be a ground for reversing [Petitioner's] conviction because PD1 was not his attorney for either the December 2004 trial that ended with a deadlocked jury or the February 2005 trial that resulted in [Petitioner's] conviction. Second, reversal cannot be based on any failure of the superior court to give [Petitioner] the opportunity to explain why PD2 should have been replaced or any failure to create a record of the inquiry into [Petitioner's] concerns. (See *People v. Hill* (1983) 148 Cal.App.3d 744, 754-755 [judge's off-the-record inquiry in defendant's absence left the appellate record silent and resulted in *Marsden* error].) At the July 8, 2004, and December 1, 2004, hearings on [Petitioner's] *Marsden* motions, [Petitioner] was given an adequate opportunity to explain his concerns about the representation he was receiving from his appointed counsel.
>
> In analyzing [Petitioner's] assertion that failure to replace his appointed attorney substantially impaired his right to assistance of counsel, we must consider the following well-established principles.
>
> First, a defendant does not have a right to the appointment of an attorney of his or her choice. (*Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1022, disapproved on a different point in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1069, fn. 6; see *People v. Crandell* (1988) 46 Cal.3d 833, 860, overruled on other grounds in *People v. Clayton* (2002) 28 Cal.4th 326, 364-365.) Further, a defendant may not achieve the appointment of his or her choice of attorney by claiming lack of trust in, or inability to get along with, an appointed attorney. (*People v. Crandell*, *supra*, at p. 860.) Otherwise, defendants would have, in effect, veto power over any appointment and by process of elimination could obtain the attorney of their choice. (*Ibid*.)
>
> Second, a defendant does not have a right to an appointed attorney who will conduct the defense in accordance with the defendant's wishes. (*People v. Lucky* (1988) 45 Cal.3d 259, 281-282.) Thus, disagreements over tactics and strategy are insufficient to compel the discharge of appointed counsel, unless a complete breakdown in the attorney-client relationship has occurred. (*People v. Crandell*, *supra*, 46 Cal.3d at pp. 858-860.)
>
> Third, a trial court need not determine that an irreconcilable conflict exists between a defendant and the defendant's appointed attorney "if the defendant has not made a sustained good faith effort to work out any disagreements with counsel

and has not given counsel a fair opportunity to demonstrate trustworthiness. . . ." (*People v. Crandell*, *supra*, 46 Cal.3d at p. 860; *People v. Memro* (1995) 11 Cal.4th 786, 857.) Stated otherwise, "a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict. [Citation.]" *(People v. Smith* (1993) 6 Cal.4th 684, 696.)

Based on the foregoing principles of law, it is clear that the superior court applied the correct legal standards when considering defendant's *Marsden* motions. [Petitioner] was given an adequate opportunity to present his position and the superior court applied the correct test for adequate representation and irreconcilable conflict.

Furthermore, the superior court's findings of fact are supported by substantial evidence. The court was familiar with PD2's experience and the representation that he had provided to [Petitioner] and found the representation adequate. In addition, an irreconcilable conflict was not created by tactical differences regarding voir dire and discovery motions. Also, [Petitioner's] statement at the July 8, 2004, *Marsden* hearing that he did not want PD2 as his attorney "regardless of his qualifications" is evidence that he had not given counsel a fair opportunity to demonstrate trustworthiness.

Accordingly, we conclude the trial court did not abuse its discretion when it denied [Petitioner's] *Marsden* motions.

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[3] The record is clear and undisputed that counsel was appointed for Petitioner because he did not have sufficient funds to secure an attorney on his own. (I CT 3.) Consequentially, and contrary to Petitioner's contention, he did not have a constitutional right to the appointment of counsel of his own choice. In addition, as stated by the Court of Appeal, there was an insufficient showing of an irreconcilable conflict resulting in a Sixth Amendment violation. The state court's factual findings are presumed correct, unless Petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to do. As such, it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[3] The California Court of Appeal's citation to decisions of the California Supreme Court, and not United States Supreme Court, is inconsequential as long as, such as in this case, the standard set forth by the California Supreme Court is equivalent to the federal standard. See Early v. Packer, 537 U.S. 3, 8 ("Avoiding [AEDPA's] pitfalls does not require citation to our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).

Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 26, 2008**             /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE